```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
THE NETHERLANDS INSURANCE                             :
COMPANY,                                              :
                                                      :
                              Plaintiff,              :        14 Civ. 7132 (KPF)
                                                      :
                    v.                                :        OPINION AND ORDER
                                                      :
SELECTIVE INSURANCE COMPANY OF                        :
AMERICA,                                              :
                                                      :
                              Defendant.              :
                                                      :
------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 3, 2016
```

KATHERINE POLK FAILLA, District Judge:

Plaintiff Netherlands Insurance Company initiated this action in September 2014, requesting a declaratory judgment that Defendant Selective Insurance Company of America had obligations to defend and indemnify two corporate entities, Bonefish Grill, LLC ("Bonefish") and Crossection, Inc. ("Crossection"), in an underlying personal injury action brought in state court. On May 18, 2015, the parties filed cross-motions for partial summary judgment, seeking various forms of relief. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

## BACKGROUND[1]

### A. Factual Background

#### 1. The Underlying Action

On or about May 8, 2013, Michael Carriere ("Carriere") and Lori Carriere filed a complaint in the Supreme Court of the State of New York, New York County (the "Underlying Complaint"). (Neale Decl., Ex. 1).[2] According to this complaint, Bonefish owns premises at the Ridge Hill shopping center in Yonkers, New York (the "Premises" or the "Jobsite"). (*Id.*). Bonefish allegedly hired Crossection to perform construction work at the Premises. (*Id.*). Crossection, in turn, hired Souza Drywall Co., Inc. ("Souza") as a subcontractor. (*Id.*).

The Underlying Complaint alleges that on January 17, 2013, Carriere was "lawfully upon the [Jobsite] as an employee of District Council 9." (Neale Decl., Ex. 1). District Council 9 of the International Union of Painters and Allied Trades is an organization that represents "contractors specializ[ing] in painting, wall covering, [and] drywall finishing," among other trades. (Ihrig Aff., Ex. 15). While performing work at the Premises for District Council 9, Carriere

---

[1] The facts recited in this Opinion are drawn from the parties' submissions in connection with their cross-motions for summary judgment, including the declaration of Jason Neale ("Neale Decl." (Dkt. #22)), the affidavit of Michael L. Ihrig II ("Ihrig Aff." (Dkt. #23)), and the affirmation of Daniel W. Morrison ("Morrison Aff." (Dkt. #29)). For convenience, the Court will refer to the parties' respective opening briefs as "Pl. Br." (Dkt. #21) and "Def. Br." (Dkt. #27); and will refer to the parties' respective opposition briefs as "Pl. Opp." (Dkt. #30) and "Def. Opp." (Dkt. #32).

[2] The Court will refer to the state court litigation as the "Carriere litigation."

allegedly slipped on snow and ice, and sustained "serious and severe injuries." (Neale Decl., Ex. 1).

Carriere brought suit against Bonefish and Crossection, claiming that his injuries were caused "solely and wholly by reason of the negligence, carelessness and recklessness of [Bonefish, Crossection], their contractors, agents and employees[,] who were negligent in the ownership, operation, management and control of the ... premises." (Neale Decl., Ex. 1). Carriere also claimed that

> [Bonefish, Crossection, and] their contractors, agents and employees ... violated Sections 200, 240 and 241(6) of the Labor Law of the State of New York, Rule 23 of the Industrial Code of the State of New York, specifically but not limited to 23-1.5, 23-1.7, 23-2.1, 23-1.30, Article 1926 of O.S.H.A[.] and w[ere] otherwise negligent, careless and reckless causing [Carriere] to sustain serious and severe injuries.

(*Id.*). Separately, Carriere's wife, Lori Carriere, claimed that, as a result of Carriere's injuries, she suffered a loss of consortium. (*See Id.*).

On or about September 10, 2013, Crossection filed a third-party complaint against Souza (the "Third-Party Complaint"). (Neale Decl., Ex. 2). The Third-Party Complaint alleged, in relevant part, that the "hazardous condition complained of in the [Underlying Complaint] was caused and/or created and/or allowed and/or permitted by the third-party defendant, SOUZA, its agents, servants and/or employees." (*Id.*). The Third-Party Complaint also alleged that, in light of the contract between Crossection and Souza, Souza had an obligation to defend and indemnify Crossection in the Carriere litigation. (*See id.*).

### 2. Relevant Contracts

Resolution of the instant cross-motions turns on the text and interplay of provisions in three contracts: (i) a contract between Souza and Crossection; (ii) a contract between Souza and Defendant; and (iii) a contract between Crossection and Plaintiff. Those provisions are discussed in the remainder of this section.

#### a. The Contract Between Souza and Crossection

On or about October 9, 2012, Souza entered an agreement with Crossection, pursuant to which Souza agreed to perform a portion of the construction work at the Premises (the "Subcontract"). (Morrison Aff., Ex. G). Specifically, Souza agreed to "furnish, install and incorporate everything necessary to perform the ***Wood and Metal Framing/Drywall Systems/Insulation/Wood Blocking/Frames, Doors and Hardware Install/Acoustical Ceiling/FRP Scope*** Work in strict accordance with the Contract Documents[.]" (*Id.*).[3]

The Subcontract contains two provisions that are particularly relevant here: an insurance coverage provision and a union labor provision. The insurance coverage provision states, in relevant part, that Souza "shall maintain" liability insurance coverage. (Morrison Aff., Ex. G). The provision also states that Crossection and Bonefish, "along with their respective officers, agents and employees, shall be named as additional insureds for Ongoing

---

[3]   Except as otherwise noted, emphasized text in this section is original to the contract documents.

4

Operations and Products/Completed Operations on [Souza's] … Commercial General Liability Policy, which must be primary and noncontributory with respect to the additional insureds." (*Id.*).  The union labor provision states: "This project requires the use of union labor.  **Souza Drywall Co., Inc.** agrees to handle all union related issues pertaining to the Carpentry, Drywall Systems, Insulation, Acoustical Ceiling and FRP trades." (*Id.*).

### b. The Contract Between Souza and Defendant

Defendant contracted to provide general liability insurance coverage to Souza from November 16, 2012, to November 16, 2013.  (Ihrig Aff., Ex. 14).  The insurance contract (the "Selective Policy") contained an endorsement, entitled "ELITEPAC General Liability Extension." (*Id.*).  This endorsement provided, in relevant part:

> Subject to the **Primary and Non-Contributory** provision set forth in this endorsement, SECTION II - WHO IS AN INSURED is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your ongoing operations, "your product", or premises owned or used by you; …
>
> **Primary and Non-Contributory Provision**
>
> The following is added to Paragraph **4. Other Insurance, b. Excess Insurance** under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

5

> This insurance shall be excess with respect to any person or organization included as an additional insured under this policy, any other insurance that person or organization has shall be primary with respect to this insurance, unless:
>
> (1) The additional insured is a Named Insured under such other insurance;
>
> (2) You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis; and
>
> (3) The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

(*Id.*).

### c. The Contract Between Crossection and Plaintiff

Finally, Plaintiff issued a general liability insurance policy to Crossection (the "Netherlands Policy"), which provided coverage from November 1, 2012, to November 1, 2013. (Neale Decl., Ex. 3). The Netherlands Policy contains an "Other Insurance" provision, which provides, in relevant part: "This insurance is excess over … [a]ny other primary insurance available to [Crossection] covering liability for damages arising out of the premises or operations for which [Crossection] ha[s] been added as an additional insured by attachment of an endorsement." (*Id.*).

### 3. The Tenders and Responses

On April 24, 2014, Plaintiff tendered the defense and indemnification of Crossection and Bonefish to Defendant. (Neale Decl., Ex. 5). On April 29,

2014, Defendant responded that it was "in the process of reviewing the coverage and completing our investigation and therefore cannot accept the tender for defense and indemnification and additional insured status at this point in time. Selective will review your request after the depositions [in the Carriere litigation] are completed." (Neale Decl., Ex. 7).

By email dated July 1, 2014, Plaintiff re-tendered the defense of Crossection and Bonefish. (Neale Decl., Ex. 8). The record does not contain any indication that Defendant denied coverage after receiving Plaintiff's email, although the instant cross-motions are an obvious indicator of Defendant's position.

**B.     Procedural Background**

On September 4, 2014, Plaintiff filed a Complaint in this Court, seeking: (i) a declaratory judgment that Defendant is required to defend and indemnify Crossection and Bonefish in the Carriere litigation (Dkt. #1 at 7); (ii) a declaratory judgment that the Selective Policy "appl[ies] on a primary basis before coverage under the Netherlands [P]olicy" (*id.* at 8); (iii) a money judgment "equal to what [Plaintiff] has incurred and will incur to defend Crossection and Bonefish" (*id.*); and (iv) "the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper" (*id.* at 9-10).

On May 18, 2015, the parties filed cross-motions for partial summary judgment. (Dkt. #20, 25). Plaintiff argues that it is entitled, as a matter of law, to a declaration that Defendant has a duty to defend Crossection and Bonefish

7

in the Carriere litigation. (Pl. Br. 1). In addition, Plaintiff contends that it is entitled to a declaration that "[Defendant's] coverage for Bonefish and Crossection applies on a primary basis as compared to [Plaintiff's] coverage." (*Id.*). Plaintiff also seeks $15,854.45, which represents the costs Plaintiff has incurred defending Crossection and Bonefish. (*Id.*). Finally, Plaintiff insists that it is entitled to recover "the costs and disbursements of this action." (*Id.*). Conversely, Defendant argues that it is entitled, as a matter of law, to a declaration that it has no duty to defend Crossection and Bonefish, as well as the costs and disbursements of this action. (Def. Br. 1-2).[4]

## DISCUSSION

**A.     Applicable Law**

"Federal and state courts in New York have recognized that determination of an insurer's duty to defend presents a question of law appropriate for resolution by summary judgment." *Wausau Underwriters Ins. Co.* v. *QBE Ins. Corp.*, 496 F. Supp. 2d 357, 360 (S.D.N.Y. 2007), *opinion clarified*, 533 F. Supp. 2d 389 (S.D.N.Y. 2008). Under Federal Rule of Civil Procedure 56, a court may grant a motion for summary judgment if the record "'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322 (1986) (internal quotation marks omitted); *accord Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A fact is "material" if

---

[4]     The parties have not asked the Court to decide whether Defendant has a duty to indemnify (as opposed to defend) Crossection and Bonefish. (*See* Pl. Br. 1; Def. Br. 2).

8

it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *see also Jeffreys* v. *City of New York,* 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). When a court decides whether a reasonable jury could return a verdict for the nonmoving party, it must "view the evidence in the light most favorable to the party opposing summary judgment." *Rodriguez* v. *City of New York,* 72 F.3d 1051, 1061 (2d Cir. 1995); *see also United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962).

A party "seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The moving party may carry this burden by showing that the non-moving party has not produced sufficient evidence "to establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.,* 711 F.3d 253, 256 (2d Cir. 2013).

If the movant carries its initial burden, the non-moving party cannot respond by reciting "allegations or denials" contained in the pleadings. *Anderson,* 477 U.S. at 248; *see also Celotex,* 477 U.S. at 323-24; *Wright* v.

9

*Goord,* 554 F.3d 255, 266 (2d Cir. 2009). Nor can the non-moving party rely on "speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986). Instead, the non-moving party must point to evidence in the record that creates a "genuine issue for trial." *Anderson,* 477 U.S. at 248.

**B.  Analysis**

    **1.  The Duty to Defend Under New York Law**

Under New York law, an insurer's duty to defend is "exceedingly broad." *Cont'l Cas. Co.* v. *Rapid-Am. Corp.,* 80 N.Y.2d 640, 648 (1993). "An insurer must defend whenever the four corners of the complaint suggest … a *reasonable possibility* of coverage." *Id.* (emphasis added); *accord Fitzpatrick* v. *Am. Honda Motor Co.,* 78 N.Y.2d 61, 65 (1991). In other words, the insurer must defend if any of the events described in the complaint are "potentially within the language of the insurance policy." *Town of Massena* v. *Healthcare Underwriters Mut. Ins. Co.,* 98 N.Y.2d 435, 443 (2002). Furthermore, even if the text of a complaint does not — by itself — trigger a duty to defend, the insurer will still be obligated to provide a defense if it has "actual knowledge of facts establishing a reasonable possibility of coverage." *Fitzpatrick,* 78 N.Y.2d at 67.

    **2.  Defendant Has a Duty to Defend Both Crossection and Bonefish**

Here, the Underlying Complaint creates a "reasonable possibility" that the Selective Policy covers Crossection and Bonefish. *Cont'l Cas. Co.,* 80 N.Y.2d at 648. As explained above, the Selective Policy contains an "ELITEPAC

General Liability Extension," which adds "as an additional insured any person or organization whom [Souza] ha[s] agreed in a written contract … [to] add[] as an additional insured."  (Ihrig Aff., Ex. 14).  The coverage for these additional insureds extends "to liability for 'bodily injury' or 'property damage' or 'personal and advertising injury' caused, in whole or in part, by … [Souza's] ongoing operations, '[Souza's] product', or premises owned or used by [Souza]."  (*Id.*).

      Defendant cannot — and does not — dispute that Souza "agreed in a written contract" to add Crossection and Bonefish as "additional insured[s]" under the Selective Policy.  (Ihrig Aff., Ex. 14).  The contract between Souza and Crossection expressly provides that Crossection and Bonefish, "along with their respective officers, agents and employees, shall be named as additional insureds" on Souza's "Commercial General Liability" insurance.  (Morrison Aff., Ex. G).  The key question, therefore, is whether the Underlying Complaint seeks to hold Crossection and Bonefish liable for injuries "caused, in whole or in part, by … [Souza's] ongoing operations, '[Souza's] product', or premises owned or used by [Souza]."  (Ihrig Aff., Ex. 14).

      While the Underlying Complaint is not particularly detailed, there is a reasonable possibility that it requests compensation from Crossection and Bonefish for injuries "caused, in whole or in part, by … [Souza's] ongoing operations."  (Ihrig Aff., Ex. 14).  The Underlying Complaint alleges that "**CROSSECTION, INC.** entered into a subcontract with Souza Dry Wall for Souza Dry Wall to perform work, labor and services at the … premises."  (Neale Decl., Ex. 1).  It then goes on to allege that:

11

> [Bonefish, Crossection,] *their contractors, agents and employees* failed to ensure that snow, ice and other slippery hazards were removed, covered or otherwise cured; further, failed to utilize de-icers [at the Jobsite]; further, failed to ensure that work areas, passageways and thoroughfares were free of slipping and tripping hazards; further, allowed dangerous and slippery hazards to be and remain at the [J]obsite, causing dangerous and hazardous conditions; further, failed to properly sand, cover, salt, remove ice, snow and other slipping hazards, causing [Carriere] to slip and sustain serious and severe injuries; further, violated Sections 200, 240 and 241(6) of the Labor Law of the State of New York, Rule 23 of the Industrial Code of the State of New York, specifically but not limited to 23-1.5, 23-1.7, 23-2.1, 23-1.30, Article 1926 of O.S.H.A[.] and [were] otherwise negligent, careless and reckless causing [Carriere] to sustain serious and severe injuries.

(*Id.* (emphasis added)). Reading the allegation that Souza was a subcontractor together with the allegation that Bonefish, Crossection, *and* "their contractors" left slipping hazards around the Premises, the Underlying Complaint suggests a reasonable possibility that Crossection was at least partially responsible for Carriere's accident. In other words, the Underlying Complaint suggests a reasonable possibility that Carriere's injuries were "caused, in whole or in part, by … [Souza's] ongoing operations" at the Jobsite. (Ihrig Aff., Ex. 14).[5]

Defendant contends that it has no duty to defend Crossection or Bonefish because the Underlying Complaint does not specifically allege that "Michael Carriere had been working for Souza Drywall, that Michael Carriere had been at the [Jobsite] at the request of Souza Drywall, or that Michael

---

[5]   The parties have not addressed whether the Underlying Complaint contains allegations that Carriere's injuries were caused, at least in part, by "premises owned or used by [Souza]." (Ihrig Aff., Ex. 14). Consequently, the Court has not considered that issue.

Carriere had been an agent or servant of Souza Drywall." (Def. Opp. 8). Nor, Defendant observes, does the Underlying Complaint contain a specific allegation that "Michael Carriere had been injured due to the ongoing operations of Souza Drywall, or that Michael Carriere had been injured within the scope of work that Souza Drywall had agreed to perform pursuant to the Subcontract." (*Id.* at 9).

It is true that the Underlying Complaint does not specify precisely how Souza's conduct contributed to Carriere's injuries. However, the duty to defend is triggered by "poorly or incompletely pleaded [complaints] as well as those artfully drafted." *Ruder & Finn Inc.* v. *Seaboard Sur. Co.*, 52 N.Y.2d 663, 670 (1981); *see also Fitzpatrick*, 78 N.Y.2d at 68 (explaining that insurance companies should not be able to escape the duty to defend in cases where "the drafter of [a] pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's [liability insurance] coverage"). Consequently, if a complaint "contains *any* facts or allegations which bring the claim *even potentially* within the protection purchased, the insurer is obligated to defend." *Technicon Elecs. Corp.* v. *Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989) (emphases added). Here, the Underlying Complaint alleges that Bonefish, Crossection, *and* "their contractors" created a slippery work environment, which caused Carriere to fall. (Ihrig Aff., Ex. 14). This allegation creates some "potential[]" that Carriere is accusing Souza of contributing to his

injuries. *Technicon Elecs. Corp.*, 74 N.Y.2d at 73. Thus, the allegation creates a duty to defend.[6]

### 3. The Selective Policy Provides Primary Coverage for Crossection

When a particular claim is covered by two or more insurance policies, courts look to the "other insurance" clauses of those policies to apportion coverage between the relevant insurance carriers. *See Sport Rock Int'l, Inc.* v. *Am. Cas. Co. of Reading, PA*, 878 N.Y.S.2d 339, 344 (1st Dep't 2009) (citing *Great N. Ins. Co.* v. *Mount Vernon Fire Ins. Co.,* 92 N.Y.2d 682, 686-87 (1999)).

Here, the "other insurance" clause of the Selective Policy suggests that it provides primary coverage for Crossection. Under that policy, if an "additional insured" has multiple forms of liability insurance, it can receive primary coverage from Selective, so long as: (i) the additional insured is a "Named Insured under ... [another] insurance [policy]"; (ii) Souza "agreed in a written contract, written agreement or written permit to include that additional insured on [its] General Liability policy on a primary and/or non-contributory basis"; and (iii) the "written contract or written agreement [was] executed ... or written permit issued prior to the [relevant] 'bodily injury.'" (Ihrig Aff., Ex. 14). As explained above, Crossection is an "additional insured" under the Selective Policy. Furthermore, the record contains uncontested evidence that Crossection was a "Named Insured under ... [another] insurance [policy]"

---

[6] In light of this conclusion, the Court need not consider whether evidence outside the four corners of Underlying Complaint establishes that Carriere went to the premises to verify that Souza was using union labor.

14

(specifically, the Netherlands Policy). (*Id.*; *see* Neale Decl., Ex. 3). The record also contains uncontested evidence that Souza "agreed in a written contract … to include [Crossection] on [its] General Liability policy on a primary and/or non-contributory basis." (Ihrig Aff., Ex. 14; *see* Morrison Aff., Ex. G). Crucially, Souza signed this written contract before Carriere suffered the injuries described in the underlying complaint. (*See* Morrison Aff., Ex. G). As a result, Crossection satisfies the criteria for primary coverage under the Selective Policy.

The "other insurance" clause of the Netherlands Policy bolsters the conclusion that the Selective Policy provides primary coverage for Crossection. The Netherlands Policy provides, in relevant part: "This insurance is excess over … [a]ny other primary insurance available to [Crossection] covering liability for damages arising out of the premises or operations for which [Crossection] ha[s] been added as an additional insured by attachment of an endorsement." (Neale Decl., Ex. 3). Notably, Crossection became an "additional insured" under the Selective Policy "by attachment of an endorsement." (*Id.*; *see* Ihrig Aff., Ex. 14). Thus, according to the terms of the Netherlands Policy, the Netherlands coverage is excess over (i.e., subordinate to) the Selective coverage.

In sum, taking the terms of the Selective Policy and the Netherlands Policy together, it is clear that the Selective Policy provides primary insurance for Crossection.

### 4. Defendant Has Abandoned Any Argument Regarding Priority of Coverage for Bonefish

Plaintiff also suggests that the Selective Policy provides primary coverage to Bonefish. On this record, the Court is reluctant to accept Plaintiff's suggestion. As explained above, the Selective Policy provides that an "additional insured" — such as Bonefish — can receive primary coverage from Defendant if, among other things, the "additional insured" is a "Named Insured under … [another] insurance [policy]." (Ihrig Aff., Ex. 14). However, Plaintiff has not shown that Bonefish is a "Named Insured" under the Netherlands policy or any other policy: Crossection appears to be the only named insured on the Netherlands Policy (Neale Decl., Ex. 3), and the record does not indicate that Bonefish was named on any other insurance agreement. Consequently, it is not at all clear that Bonefish meets the criteria for primary coverage under the Selective Policy.[7]

Nevertheless, Defendant has abandoned any arguments regarding priority of insurance coverage for Bonefish because it failed to discuss this issue in its response brief. As the Second Circuit recently explained, "Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part [of the motion], is unopposed. *Jackson* v. *Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

---

7   As Plaintiff points out, Bonefish does not seem to meet the criteria for primary coverage under the Netherlands Policy either. (*See* Pl. Br. 21). However, it is possible that the Selective Policy and the Netherlands Policy *both* provide excess coverage for Bonefish. *See Great N. Ins. Co.,* 92 N.Y.2d at 687 (explaining that, when two policies both provide excess coverage for an insured, the "companies must apportion the costs of defending and indemnifying [the insured] on a pro rata basis").

16

However, if all of the parties to a case are represented by counsel, there is "a relevant distinction to be drawn between fully unopposed and partially opposed motions for summary judgment." *Id.* at 196. When a counseled party ignores a summary judgment motion completely, the party elects to have "the court … determine the legal merits of all claims or defenses." *Id.* By contrast, if a counseled party makes a partial response to a motion for summary judgment, that response "generally, but perhaps not always, … reflects a decision by [that] party's attorney to pursue some claims or defenses and to abandon others." *Id.*

Here, Plaintiff devoted a sizeable portion of its opening brief to the issue of priority of coverage, but Defendant — who is represented by counsel — declined to discuss priority of coverage in its response. Furthermore, Defendant's response brief insists that the "sole issue" is whether Bonefish and Crossection are "additional insured[s]" under the Selective Policy. (Def. Opp. 5). Thus, Defendant has abandoned any argument that, as an "additional insured" under the Selective Policy, Bonefish is only entitled to excess coverage. *See Jackson* v. *Fed. Exp.*, 766 F.3d at 194. Plaintiff is therefore entitled to a declaratory judgment that Crossection *and* Bonefish have primary insurance coverage from Defendant.

### 5. Plaintiff Is Entitled to Monetary Relief

Because the Court concludes that the Selective Policy provides primary insurance coverage for Crossection and Bonefish, Plaintiff is entitled to recover

the reasonable costs of defending these two entities through August 13, 2014.[8] Based on the evidence that Plaintiff submitted, the Court concludes that it was reasonable for Plaintiff to spend $15,854.45 defending Crossection and Bonefish. (*See* Neale Decl., Ex. 9-10). As a result, Plaintiff is entitled to collect $15,854.45, plus prejudgment interest. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *Greenwich Ins. Co.*, 962 N.Y.S.2d 9, 11 (1st Dep't 2013) ("[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so[.]"); *id.* (awarding prejudgment interest where an insurance company breached a duty to defend); *Danaher Corp.* v. *Travelers Indem. Co.*, No. 10 Civ. 121 (JPO), 2015 WL 1647435, at *6-7 (S.D.N.Y. Apr. 14, 2015) (same).

### 6. Plaintiff Cannot Recover the Costs of This Action

Finally, Plaintiff cannot recover the costs of this action. "It is well settled that an insured may recover such sums incurred in successfully defending a declaratory judgment action brought by the insurer to avoid its obligation to defend under the policy." *U.S. Underwriters Ins. Co.* v. *Weatherization, Inc.*, 21 F. Supp. 2d 318, 327-28 (S.D.N.Y. 1998) (citing *Emp'rs Mut. Cas. Co.* v. *Key Pharm.*, 75 F.3d 815, 824 (2d Cir. 1996); *Commercial Union Ins. Co.* v. *Int'l Flavors & Fragrances, Inc.*, 639 F. Supp. 1401, 1402 (S.D.N.Y. 1986); *Mighty Midgets, Inc.* v. *Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979); *Empire Ins. Co.* v.

---

[8] The proceedings in the Carriere litigation have been stayed because one of the entities involved in that action filed for bankruptcy. (*See* Neale Decl., Ex. 2 n.1).

*Silbowitz,* 663 N.Y.S.2d 7, 8 (1st Dep't 1997); *Gov't Emp's Ins. Co.* v. *DiCrisci,* 416 N.Y.S.2d 639, 640 (2d Dep't 1979)).  By contrast, however, "sums incurred in prosecuting claims against the insurer … are not recoverable."  *Id.* (citing, among other cases, *Commercial Union Ins. Co.,* 639 F. Supp. at 1402-03; *Mighty Midgets, Inc.,* 47 N.Y.2d at 21.  Because Plaintiff initiated this action, it cannot recover any fees.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted.  The Court hereby declares that Defendant has a duty to defend Crossection and Bonefish in the Carriere litigation.  In addition, the Court declares that the Selective Policy provides primary insurance coverage for Crossection and Bonefish.  Thus, Plaintiff is entitled to recover $15,854.45, plus prejudgment interest, for defending Crossection and Bonefish to date.

Defendant's motion for summary judgment is denied.

The Clerk of Court is ORDERED to terminate docket entries 20 and 25.  The Parties are ORDERED to appear for a pretrial conference on **March 17, 2016, at 4:00 p.m.**, in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007.

SO ORDERED.

Dated:   March 3, 2016
         New York, New York

                                          KATHERINE POLK FAILLA
                                          United States District Judge